# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYREEM M. RIVERS, | : | Civil No. 3:16-cv-2092 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SUPERINTENDENT LAWRENCE MAHALLY, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Tyreem Rivers ("Rivers"), an inmate currently confined at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"), initiated the instant action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent Lawrence Mahally, Deputy Superintendent Joseph Zakaraukas, and Safety Manager Eric Sowga. (*Id.* at pp. 1-2). Rivers alleges that Defendants were negligent and violated his Eighth Amendment rights by failing to follow a proper fire evacuation plan at SCI-Dallas. (*Id.* at pp. 2-4, 7).

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). (Doc. 16). For the reasons set forth below, the motion will be denied.

I. **Motion to Dismiss Standard of Review**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

Id.

## II. Allegations of the Complaint

On October 16, 2014, between 1:00 a.m. and 2:00 a.m., there was a fire at SCI-Dallas. (Doc. 1, p. 2). Rivers alleges that he awoke to the sound of a firm alarm and flashing lights. (Id. at p. 3). A block officer removed Rivers from his cell and placed him in the dayroom with approximately two hundred (200) other inmates until the fire was under control. (Id.). Rivers claims this action violated the prison's fire evacuation plan and safety

3

policy posted in the housing unit. (*Id.*). Rivers claims that he inhaled "toxic smoke and fumes" as a result of the block officer's actions. (*Id.*). As a result of the smoke inhalation, Rivers, an asthmatic, alleges that he suffered from pain, dizziness, migraines, difficulty breathing, and irritation of the throat, eyes, nose, and chest. (*Id.*). He states that he was treated by the medical department and received several medications to treat his alleged injuries. (*Id.*).

Rivers alleges that Defendant Zakaraukas arrived at the scene and was "negligent/liable in failing to follow a proper evacuation plan and/or for ordering that this Plaintiff . . . be locked in the day room[] while the fire took place and sought to be placed under control." (*Id.*). He alleges that Defendant Sowga "failed to insure that the B-Block Housing Unit was expected, safe, and free from a unreasonable fire incident, and/or liable/negligent for not enforcing a proper plan which would have prevented this Plaintiff from being injured etc." (*Id.*) (sic). He further alleges that Defendant Mahally was "negligent and/or liable in this matter due to his failure to 'enforce' a proper fire evacuation plan in consideration of the general safety and welfare of this Plaintiff here at SCI Dallas," and "due to 'his failure' to properly train each of the above stated Defendants in following the proper fire evacuation plan." (*Id.* at p. 4).

On October 21, 2014, Rivers filed a grievance pertaining to the fire on October 16, 2014, designated as Grievance Number 533613. (*Id.* at p. 7). On November 6, 2014,

4

Safety Manager Sowga denied the grievance on initial review. (*Id.* at p. 13). Rivers filed an appeal to the Facility Manager. (*Id.* at p. 14). On November 28, 2014, Facility Manager Mahally upheld the response of Safety Manager Sowga. (*Id.* at p. 14). Rivers then filed an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id.* at p. 16). On January 27, 2015, the Chief Grievance Officer upheld the decisions of Safety Manager Sowga and Facility Manager Mahally. (*Id.* at p. 17).

In the complaint, Rivers alleges that Defendants acted negligently and thereby violated his Eighth Amendment rights. (Doc. 1). Rivers seeks declaratory relief, compensatory and punitive damages, and costs. (Doc. 1, pp. 8-9).

## III. Discussion

Defendants seeks dismissal of the complaint based on the following: (1) Rivers failed to state a claim against Defendants because negligence is not cognizable under 42 U.S.C. § 1983; (2) Rivers failed to demonstrate personal involvement on the part of Defendants Mahally and Sowga; and, (3) Rivers failed to exhaust his administrative remedies with respect to his claims against Defendants Mahally and Sowga. (Doc. 17, pp. 3-12). The Court will address these claims *seriatim*.

### A. Eighth Amendment Claim

The Eighth Amendment protects prison inmates from cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, not all deficiencies and

inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.* Mere negligence does not give rise to a § 1983 cause of action. *See Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)

Rivers alleges that he suffered injuries from smoke inhalation during a fire at SCI-Dallas. (Doc. 1). He claims that Defendants failed to follow the fire evacuation plan by placing the inmates in the dayroom, instead of placing them outside in accordance with the evacuation plan. (Doc. 29, p. 2). Rivers alleges that Defendants were both deliberately indifferent and negligent because they failed to follow the fire evacuation plan. (Doc. 1). Taking the allegations in the complaint as true and evaluating them in accordance with the factors set forth above, Rivers has sufficiently pled a claim of deliberate indifference to his health or safety. Furthermore, Rivers has created a question of fact regarding the fire

evacuation plan at SCI-Dallas, and whether Defendants properly followed the plan in effect at the time of the fire. Consequently, the motion to dismiss based on failure to state a claim will be denied.

B. **Personal Involvement regarding Mahally and Sowga**

Defendants argue that Rivers failed to state a claim against Mahally and Sowga because they lack personal involvement in the alleged wrongs, and because Rivers' allegations against them, at most, are based on the doctrine of *respondeat superior*. (Doc. 17, pp. 7-8).

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal

knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

Rivers alleges that Mahally failed to properly train prison staff regarding the fire evacuation plan, and that Sowga failed to ensure that there was a proper fire evacuation plan in place. (Doc. 1, pp. 3-4). In his brief in opposition to Defendants' motion, Rivers asserts that Defendant Mahally was directly involved in the events at issue because he ordered that all inmates be placed in the dayroom during the fire. (Doc. 29, p. 15). Rivers has submitted declarations from fellow inmates wherein they also claim that Defendant Mahally ordered that all inmates be placed in the dayroom during the fire. (*Id.* at pp. 21-26). Rivers further asserts that Defendant Sowga was directly involved in the events in question because he is the fire inspector and safety manager at SCI-Dallas. (*Id.* at p. 15). Rivers claims that Defendant Sowga failed to ensure that the generator, which caused the electrical fire, was properly inspected. (*Id.*). Taking the allegations as true, Rivers has sufficiently pled claims against Mahally and Sowga under § 1983. Therefore, the Court will deny the motion to dismiss the claims against Defendants Mahally and Sowga based on lack of personal involvement in the alleged wrongs.

C. **Exhaustion of Administrative Review**

Lastly, Defendants argue that Rivers failed to exhaust any claims against Mahally and Sowga because he failed to file a grievance against either Defendant regarding their

alleged conduct. (Doc. 17, pp. 6-12).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural

default component); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal court.") (emphasis added). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. "As for the failure to [] identify [the] named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (citing *Spruill*, 372 F.3d at 234).

The Pennsylvania Department of Corrections ("DOC") Inmate Grievance System Policy consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. DC-ADM 804, § 1(A)(9). "The text of the grievance must be legible, understandable, and presented in a

courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. DC-ADM 804, § 2(A)(1). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. DC-ADM 804, § 2(B). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

As noted above, the standard used in determining whether a prisoner has exhausted the administrative process is whether he complied with the applicable grievance procedures and rules. The relevant policy and the pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (Doc. 17-1, p. 19, DC-ADM 804, § 1(A)(12)(b)). Rivers does not dispute that he failed to specifically name Defendants Mahally and Sowga in his initial grievance. (Doc. 29, pp. 16-18). Instead, he asserts that Mahally

11

and Sowga are encompassed in his grievance, which stated that "all other staff involved" failed to follow proper fire evacuation rules. (Doc. 17-1, p. 11, Official Inmate Grievance). Rivers' claims against Mahally and Sowga directly relate to their alleged roles in the fire on October 16, 2014. It is reasonable to conclude that Defendants Mahally and Sowga were "fairly within the compass" of the grievance itself. *Spruill*, 372 F.3d at 234. Consequently, the Court will deny Defendants' motion to dismiss the claims against Mahally and Sowga based on failure to exhaust.

IV. **Conclusion**

Based on the foregoing, Defendants' motion (Doc. 16) to dismiss will be denied. A separate Order shall issue.

Date: February 28, 2018

Robert D. Mariani
United States District Judge